# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Charles Waters and Anita Waters,                                    Civ. No. 17-935 (PAM/SER)

          Plaintiffs,

v.                                                          **MEMORANDUM AND ORDER**

B. Madson, Alyssa Newbury,
City of Coon Rapids, Menard, Inc.,
Tom Hawley, and Emily Kirchner,

          Defendants.

---

This matter is before the Court on Defendants' Motions to Dismiss. For the following reasons, the Motions are granted.

## BACKGROUND

On March 27, 2016, Plaintiffs Charles Waters and his wife, Anita Waters, went to the Coon Rapids store of Defendant Menard, Inc., to exchange a saw that they had purchased. (Am. Compl. (Docket No. 28) ¶ 31.) Mr. Waters returned his saw in the store and was directed to pick up his new saw from the Menard's lumberyard behind the store. (Id. ¶¶ 37-38.) Plaintiffs do not dispute the existence of signs at the entrance and exit of the Menard's lumberyard, informing patrons that vehicles are subject to inspection when they leave the lumberyard. Rather, they allege that they did not see any sign. (Id. ¶¶ 40, 49-50.)

Mr. Waters drove his vehicle into the lumberyard behind the Menard's store with Mrs. Waters in the passenger seat. (Id. ¶ 39.) A Menard's employee opened their trunk and put the new saw inside, and they then proceeded to the lumberyard exit gate. (Id.

¶¶ 41, 44, 49, 59.)  Mr. Waters's video recording[1] clearly shows a sign at the exit gate regarding vehicle inspections.  (Id. Ex. A. at 30:19.)

At the exit gate, an attendant directed Mr. Waters to open his trunk for inspection, citing the signs.  (Id. ¶ 61, Ex. A. at 30:58-31:02.)  Mr. Waters refused because he believed that he was "under no legal obligation" to open his trunk.  (Id. ¶ 62, Ex. A at 31:02-:40.)  The gate attendant requested the presence of a Menard's manager.  (Id. Ex. A at 31:59-32:04.)  Mr. Waters called the police, claiming that Menard's was unlawfully detaining him.  (Id. ¶¶ 68, 70-72, Ex. A at 33:10-:16.)

Defendant Coon Rapids Police Officers Alyssa Smith[2] and Emily Kirchner responded to the call.  (Id. ¶ 72.)  Officer Smith approached the Menard's manager first, who told her that Menard's needed to verify the purchases in Plaintiffs' trunk before they could leave and that Mr. Waters believed he was being unlawfully detained.  (Id. Ex. A at 38:02-:14.)  Officer Smith then approached Mr. Waters and directed him to let the Menard's employees verify the purchases in his trunk.  (Id. at 38:14-:37.)  Mr. Waters

---

[1]  Mr. Waters video-recorded the entire duration of his visit at Menard's, and Plaintiffs attached a highly edited version of the recording to the Amended Complaint.  (Am. Compl. ¶ 47, Ex. A.)  The Court may consider documents attached to the complaint on a motion to dismiss.  Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015) (citation omitted).  Menard's also provided security footage that captures the incident.  (Doug Stuart Decl. (Docket No. 23) Ex. D.)  Defendants Madson, Smith, Hawley, Kirchner, and the City of Coon Rapids (collectively, "the City") produced Officer Smith's full dash cam video.  (Aff. of Ryan M. Zipf (Docket No. 16-2) Ex. 2.)  The Court may consider these recordings because they are necessarily embraced by the pleadings.  See Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012) (concluding that a document is necessarily embraced by the pleadings if its contents are alleged in the complaint and the parties do not question the document's authenticity).

[2]  At the time of the incident, Officer Smith's name was Alyssa Newbury.

refused again, and Officer Smith then asked Mr. Waters for his identification, which he refused to provide because he said he was "not currently driving."  (Id. at 38:38-:59.) Officer Smith directed Mr. Waters to exit his vehicle and informed him that she had reasonable suspicion of criminal activity because he would not open his trunk and "could very well have stolen property."  (Id. ¶ 79, Ex. A at 39:17-:30.)

At this point, Plaintiffs allege that Mr. Waters exited his vehicle, Officers Smith and Kirchner pat-searched him, and he returned to his vehicle.  (Id. ¶¶ 80-83.)  They also allege that the officers directed him to exit his vehicle a second time, and after he exited the vehicle this time, the officers handcuffed him and put him in a squad car without pat-searching him.  (Id. ¶¶ 88-89.)  The record before the Court belies Plaintiffs' allegations.

Menard's security footage and Officer Smith's dash cam video clearly establish that Mr. Waters only exited his vehicle once after Officers Smith and Kirchner directed him to do so.  (Am. Compl. Ex. A at 38:57-41:13; Stuart Decl. Ex. D at 11:35-15:15; Zipf Aff. Ex. 2 at 14:25:26-:26:00.)   After Mr. Waters exited his vehicle, Officer Kirchner searched him for weapons, handcuffed him, and escorted him to a squad car.  (Stuart Decl. Ex. D at 13:52-15:15.)

Officer Smith then returned to Plaintiffs' vehicle and asked Mrs. Waters to identify Mr. Waters.  (Am. Compl. Ex. A at 46:14-49:29.)  Mrs. Waters identified Mr. Waters for Officer Smith and informed the officers that her husband has a form of autism.  (Id. at 46:25, 47:57-49:27.)  Officer Smith requested that Mrs. Waters comply with the Menard's policy by letting them verify the product that Mr. Waters purchased.  (Id. at

47:00-:08, 47:40-:55.)  And while Officer Smith was talking to Mrs. Waters, Sergeant B. Madson arrived on scene.  (Id. at 47:00.)

Officer Smith spoke with Sergeant Madson, and when she returned to Mrs. Waters, she renewed her request that Mrs. Waters comply with the Menard's policy.  (Id. at 50:46-51:28.)  Specifically, she stated, "Would you be willing to open the trunk for these gentlemen because that's the only issue holding us up here . . . ."  (Id.)  She also stated, "It'd be doing us a huge favor if you could just bring that invoice and step out with these guys and pop the trunk for us, and we'll chalk it up to [Mr. Waters] having a bad day."  (Id.)  Mrs. Waters complied; she exited the vehicle, gave the invoice to the Menard's employees, and opened her trunk.  (Id. at 51:29-59.)  The Menard's employees verified the purchase and inspected Plaintiffs' trunk, and the police officers released Mr. Waters.  (Id.)  Mr. Waters also received a trespass warning, excluding him from the Coon Rapids Menard's store for one year.  (Id. ¶ 118.)

Before Plaintiffs left the lumberyard, Mr. Waters requested the names and badge numbers of all officers present.  (Id. ¶ 129.)  Mr. Waters approached Sergeant Madson in order to obtain his badge number.  (Zipf Aff. Ex. 2 at 14:40:43.)  The dash cam video shows Mr. Waters was within reaching distance of Sergeant Madson.  (Id.)  Sergeant Madson placed his hands on Mr. Waters, turned Mr. Waters away from him, and pushed Mr. Waters in the direction of Mr. Waters's car.  (Id. at 14:40:43-:45.)  Plaintiffs left the Menard's lumberyard in their vehicle.  (Id. at 14:41:26.)  The entire encounter with law enforcement lasted about 20 minutes.

Mr. Waters filed a written complaint with the Coon Rapids Police Department on March 30, 2016.  (Id. ¶ 132.)  The Amended Complaint alleges that Captain Thomas Hawley refused Mr. Waters's request to accept the written complaint by email.  (Id. ¶¶ 137-38.)  Nevertheless, attached to the Amended Complaint is a letter from the Coon Rapids Chief of Police Brad Wise, informing Mr. Waters that the formal complaint was reviewed and that he believed the police officers acted lawfully.  (Id. Ex. F.)  The formal complaint was closed.  (Id.)

Plaintiffs filed a 19-claim Amended Complaint on July 16, 2017.  Claims I, II, III, IV, VI, IX, XVI, and XVII allege that Defendants violated Plaintiffs' First and Fourth Amendment rights.  (Id. ¶¶ 160-63, 165, 169, 179-80.)  Claim VII alleges that the City violated Plaintiffs' First, Fourth, and Fourteenth Amendment.  (Id. ¶¶ 166-67).  Claims V and VIII allege that Defendants discriminated against Mr. Waters based on his perceived political beliefs and based on his disabilities.  (Id. ¶¶ 164, 168.)  Claims X, XI, and XVIII are false imprisonment claims.  (Id. ¶¶ 170-74, 184.)  Claim XII is for battery, Claim XIII is for defamation, Claim XIV is for common-law trespass, Claim XV is for invasion of privacy, and Claim XIX is for negligence.  (Id. ¶¶ 175-78, 185-86.)  Defendants move for dismissal or summary judgment on all claims, arguing that Plaintiffs have failed to state any claim on which relief can be granted.

**DISCUSSION**

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the allegations in the Amended Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the non-moving party.  Morton v. Becker,

793 F.2d 185, 187 (8th Cir. 1986). The Court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that the plaintiff draws from the facts pled. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

A complaint must contain "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under Twombly. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

## A.    Fourth Amendment Claims

Plaintiffs argue that the City seized Mr. Waters (Claim III) and Mrs. Waters (Claim VI), and searched Plaintiffs' vehicle (Claim XVI) in violation of the Fourth Amendment. They also contend that Menard's unlawfully seized them and searched their vehicle under color of state law (Claim XVII). The City argues that it is entitled to immunity against Plaintiffs' Fourth Amendment claims, and Menard's contends that it is not a state actor subject to a § 1983 claim under the Fourth Amendment.

Qualified immunity shields a police officer from a lawsuit if a reasonable officer could have believed that the police officer's conduct was "lawful, in light of clearly

established law and the information the [police] officers possessed." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)).  In other words, the plaintiff must first "make out a violation of a constitutional right." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citations omitted).  A government official is then entitled to qualified immunity only if "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id.  Clearly established law "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" Id. at 244 (quoting Wilson v. Layne, 526 U.S. 603, 614 (1999)).  "[T]he clearly established law must be 'particularized' to the facts of the case." White v. Pauly, 137 S. Ct. 548, 552 (2017) (quoting Anderson, 483 U.S. at 640).

### 1.    Claims III and VI: Seizure

A police officer may "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)).  "Reasonable suspicion is a lower threshold than probable cause, and it requires considerably less than proof of wrongdoing by a preponderance of the evidence." United States v. Carpenter, 462 F.3d 981, 986 (8th Cir. 2006) (citations omitted).  Put into the context of qualified immunity, the City need only show, under the totality of the circumstances, that "a reasonable officer could have believed that he had a reasonable suspicion; in other words, if he had arguable reasonable suspicion." De La Rosa v. White, 852 F.3d 740, 745-46 (8th Cir. 2017).  Police officers may "draw on their own experience and specialized

training to make inferences from and deductions about the cumulative information available." United States v. Arvizu, 534 U.S. 266, 273 (2002) (citation omitted).

Here, the record demonstrates that Mr. Waters repeatedly refused to identify himself, despite the fact that he originally requested the officers' presence. See United States v. Longs, No. 07-CR-189, 2008 WL 2357858, at *3 (D. Minn. June 5, 2008) (Tunheim, J.) (concluding that a suspect attempting to conceal his identity contributes to reasonable suspicion). There is no dispute that Menard's policy requires inspection of vehicles exiting its lumberyard. Although Plaintiffs allege that they saw no sign informing them of the policy before they entered the lumberyard, Mr. Waters never told the police officers that he was unaware of Menard's policy. Instead, he repeatedly argued with the police officers and disagreed with their reasoning. (Am. Compl. Ex. A 38:00-42:53); see, e.g., United States v. Richards, 217 F. App'x 828, 831 (10th Cir. 2007) (summarizing favorably a district court's conclusion that reasonable suspicion existed, in part, based on a suspect's "hesitant and argumentative conduct"). Furthermore, he refused to follow the police officers' direction for several minutes by not exiting his vehicle. (Zipf Aff. Ex. 2 at 14:24:09-14:26:07); see United States v. Peoples, 925 F.2d 1082, 1087 (8th Cir. 1991) (finding that a suspect's refusal to comply with officers' instructions contributes to a reasonable suspicion). Officer Smith informed Mr. Waters that she had reasonable suspicion to believe that he had stolen property in his trunk because he refused to comply with the Menard's policy. (Am. Compl. Ex. A 40:18-:30.) She informed Mr. Waters that he was not under arrest, but he was being detained. (Id. Ex. A 40:45-:58.) Under the totality of the circumstances in this case, the City had at

least arguable reasonable suspicion to seize Plaintiffs.  Consequently, the police officers and the City are entitled to qualified immunity, and the unreasonable seizure claims are dismissed.

### 2.    Claim XVI: Search

"A consensual search does not violate the Fourth Amendment if the consent was voluntarily given without coercion."  United States v. Brown, 345 F.3d 574, 579 (8th Cir. 2003) (quotation omitted).  But "[w]hether consent is voluntarily given is a question of fact."  United States v. Escobar, 389 F.3d 781, 784 (8th Cir. 2004) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973)).  Plaintiffs allege that Mrs. Waters's consent was involuntary.  (Am. Compl. ¶ 114.)  The Court thus cannot conclude on a motion to dismiss that Mrs. Waters voluntarily consented to open Plaintiffs' trunk.

But regardless whether the search violated the Fourth Amendment, Plaintiffs' claim must be dismissed.  "[T]he abstract value of a constitutional right may not form the basis for § 1983 damages."  Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 308 (1986).  Thus, to succeed on a § 1983 claim for an allegedly unreasonable search, a plaintiff must prove that the search was unlawful and that it caused actual, compensable injury.  Heck v. Humphrey, 512 U.S. 477, 487 n.7 (1994) (citing Stachura, 477 U.S. at 308).  Because the Amended Complaint does not allege actual, compensable injury, this claim is dismissed.

### 3.    Claim XVII: State Actor

Menard's argues that Plaintiffs failed to establish that it is a state actor subject to a § 1983 claim.  "A private party who willfully participates in joint activity with the State

or its agents is considered a state actor." Youngblood v. Hy-Vee Food Stores, Inc., 266 F.3d 851, 855 (8th Cir. 2001) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970)).  A store may be acting jointly with the state if "the police detain accused shoplifters without making an independent investigation or pursuant to a customary plan between the store and the police department."  Id.  The Amended Complaint fails to allege that Menard's and the Coon Rapids Police Department acted jointly or had a customary plan.  Moreover, it was Mr. Waters—not Menard's—who invoked state authority.  Under these circumstances, Plaintiffs have failed to allege that Menard's was a state actor subject to their § 1983 claims.  This claim is dismissed.

### 4.    Claims IV and XII: Excessive Force and Battery

Plaintiffs contend that Sergeant Madson used excessive force by grabbing and shoving Mr. Waters, and Sergeant Madson and Officer Smith used excessive force by "deliberately and unnecessarily" causing Mr. Waters "great pain" when they handcuffed him.  (Am. Compl. ¶ 163.)  Plaintiffs' § 1983 excessive-force and battery claims against Sergeant Madson require a showing that his conduct was objectively unreasonable "under the circumstances, as judged from the perspective of a reasonable officer on the scene at the time the force was applied."  Chambers v. Pennycook, 641 F.3d 898, 907 (8th Cir. 2011) (citations omitted).  This must also allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving."  Graham v. Connor, 490 U.S. 386, 397 (1989).  In Minnesota, a battery claim also requires the plaintiff to prove that the police officer's use of force was not

reasonable.  Ward v. Olson, 939 F. Supp. 2d 956, 964 (D. Minn. 2013) (Doty, J.) (citing

Johnson v. Peterson, 358 N.W.2d 484, 485 (Minn. Ct. App. 1984)).

Notwithstanding the present procedural posture, the record establishes that Mr.

Waters approached to within arms' length of Sergeant Madson.  (Zipf Aff. Ex. 2 at

14:40:43.)  Mr. Waters had been released from a squad car, but he remained to obtain the

officers' identification, despite already receiving a trespass warning.  (Am. Compl.

¶¶ 118, 129.)  Sergeant Madson then turned him away and pushed him in the direction of

his car.  (Zipf Aff. Ex. 2 at 14:40:43-:45.)  The Court does not believe that this push was

an excessive use of force.  See Graham, 490 U.S. at 396 ("Not every push or shove, even

if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth

Amendment.") (quotation omitted).

Additionally, the Amended Complaint does not allege that Mr. Waters suffered

any injury.  "[D]e minimis injury does not necessarily foreclose a claim."  LaCross v.

City of Duluth, 713 F.3d 1155, 1158 (8th Cir. 2013) (citing Chambers, 641 F.3d at 906.)

But "the degree of injury suffered" bears on the reasonableness of the force used.  Grider

v. Bowling, 785 F.3d 1248, 1252 (8th Cir. 2015) (concluding as a matter of law that

removing an individual "from his vehicle and placing him on the ground, without injury"

was not an excessive use of force).  Plaintiffs have failed to establish that Sergeant

Madson's use of force, under the circumstances of this case, was objectively

unreasonable.  Consequently, the Court dismisses Plaintiffs' excessive force and battery

claims against Sergeant Madson.

Plaintiffs' excessive force claim as to the handcuffing similarly fails. "Handcuffing inevitably involves some use of force." Wertish v. Krueger, 433 F.3d 1062, 1067 (8th Cir. 2006).  Because handcuffing "almost inevitably will result in some irritation, minor injury, or discomfort," an excessive-force claim in the context of a handcuffing "must demonstrate something more." Chambers, 641 F.3d at 907.  Plaintiffs have failed to plead any type of injury other than alleged pain caused by the handcuffing. This claim is without merit.

**B.    Claims I, II, and IX: First Amendment**

Plaintiffs contend that "handcuffing and arresting Mr. Waters," and retaliating against him, violated his First Amendment rights to challenge the actions of public officials and to refuse to produce his identification.  (Am. Compl. ¶¶ 161-62.)

A First Amendment claim under § 1983 requires the plaintiff to establish that "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Peterson v. Kopp, 754 F.3d 594, 602 (8th Cir. 2014) (quoting Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004)).  Additionally, a plaintiff must show that police officers lacked arguable reasonable suspicion in retaliatory seizure cases. See id. (citing Galarnyk v. Fraser, 687 F.3d 1070, 1076 (8th Cir. 2012)) (stating that the standard for retaliatory arrest cases is arguable probable cause).  Here, as discussed above, Sergeant Madson, Officers Smith and Newbury, and the City are entitled to qualified

immunity because the officers had arguable reasonable suspicion to temporarily seize Plaintiffs.  Claims I and II are therefore dismissed.

Plaintiffs also argue that Captain Hawley violated Mr. Waters's First Amendment rights "by refusing to communicate with, or accept written complaints" against Sergeant Madson and Officers Smith and Newbury.  (Am. Compl. ¶ 169.)  But the Coon Rapids Police Department received and fully processed the written complaint, which was closed because Chief Wise believed that the officers acted appropriately and in accordance with the law.  (See id. Ex. F.)  Claim IX is without merit.

## C.     Claim VII: __Monell__ Violations

Plaintiffs attempt to hold the City liable for allegedly violating their First, Fourth, and Fourteenth Amendment rights.  (Id. ¶¶ 166-67.)  Under Monell v. Department of Social Services, 436 U.S. 658 (1978), Plaintiffs must establish that there is "a causal connection between the municipal policy or custom and the alleged constitutional deprivation."  Ulrich v. Pope Cty., 715 F.3d 1054, 1061 (8th Cir. 2013).  In other words, the official municipal policy must cause the constitutional violation.  Bernini v. City of St. Paul, 665 F.3d 997, 1007 (8th Cir. 2012) (quoting Monell, 436 U.S. at 691)).

Plaintiffs allege that Chief Wise ratified the allegedly unconstitutional conduct of the Defendant police officers by closing Mr. Waters's formal complaint.  But Chief Wise's after-the-fact determination that the officers acted lawfully cannot form the basis of a Monell claim because it did not cause the alleged constitutional violations.  This claim is without merit.  See Smithrud v. City of St. Paul, 746 F.3d 391, 397 (8th Cir.

2014) (upholding dismissal of <u>Monell</u> claims because the complaint "fail[ed] to allege any of the required elements").

### D.     Claim V: Equal Protection Claim

Plaintiffs allege that the City violated Mr. Waters's equal protection rights by discriminating against him based on his political or perceived political beliefs, and because the City treated him differently than a similarly situated citizen who monitors and challenges police actions.  (Am. Compl. ¶ 164.)  Because the Amended Complaint does not allege that Mr. Waters was in a suspect or quasi-suspect class, Plaintiffs must establish that Mr. Waters "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000).

Plaintiffs fail to allege any plausible fact that the police officers treated Mr. Waters differently based on his perceived political beliefs or his decision to challenge their actions.  Moreover, Plaintiffs have not identified any similarly situated individual who was treated differently.  This claim is therefore without merit and is dismissed.

### E.     Claim VIII: Discrimination Based on Disability

Plaintiffs allege that Captain Hawley's refusal to communicate with Mr. Waters by email violated anti-discrimination provisions in the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"), and the Minnesota Human Rights Act, Minn. Stat. § 363A.12 ("MHRA").  (Am. Compl. ¶ 168.)  The Court analyzes these alleged violations together. <u>Bahl v. County of Ramsey</u>, 695 F.3d 778, 783 (8th Cir. 2012).  To succeed on this claim,

Plaintiffs must show that Mr. Waters "is a qualified individual with a disability denied participation in, or the benefits of, the services, programs, or activities of a public entity because of his disability." Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir. 1998) (citation omitted).

The Amended Complaint alleges that Mr. Waters suffers from "autism, Asperger's syndrome, post-traumatic stress disorder (PTSD), post-concussive disorder, and panic disorders." (Am. Compl. ¶ 133.) Even if these disabilities qualify Mr. Waters as disabled, there is no evidence that Captain Hawley denied him any public service. Plaintiffs allege that Mr. Waters sought to file a formal complaint against the police officers through email, instead of in-person interviews, and Captain Hawley refused to accommodate his allegedly reasonable request. But notably, Mr. Waters does not allege that he actually participated in in-person interviews, and his formal complaint was fully processed. (See id. Ex. F.) The Amended Complaint also includes no factual support for its broad, conclusory statement that Mr. Waters was denied service because he is disabled. This claim is therefore dismissed.

## F.   Remaining State Law Claims

### 1.   Claims X, XI, and XVIII: False Imprisonment

In Claims X and XI, Plaintiffs allege that the City falsely imprisoned them. (Id. ¶¶ 170-74.) A claim of false arrest or false imprisonment against a Minnesota police officer is valid if it alleges "(1) an arrest performed by defendant, and (2) the unlawfulness of such arrest." Lundeen v. Renteria, 224 N.W.2d 132, 135 (Minn. 1974).

Because Plaintiffs were not arrested, the false imprisonment claims against the City must be dismissed.

Claim XVIII alleges that Menard's falsely imprisoned Plaintiffs.  (Am. Compl. ¶ 184.)  In Minnesota, a claim of false imprisonment requires "(1) words or acts intended to confine, (2) actual confinement, and (3) awareness by the plaintiff that he is confined." Blaz v. Molin Concrete Prods. Co., 244 N.W.2d 277, 279 (Minn. 1976) (citations omitted).  But "[a] private party 'is not liable for false imprisonment for conveying information about suspected criminal activity unless that party directly persuades or commands the police to detain the suspect.'"  Shqeirat v. U.S. Airways Grp., Inc., 645 F. Supp. 2d 765, 793 (D. Minn. 2009) (Montgomery, J.) (quoting Smits v. Wal-Mart Stores, Inc., 525 N.W.2d 554, 558 (Minn. Ct. App. 1994) (citation omitted)).  A defendant's conduct must "rise[] to the level of instructing the police to arrest a person" to impose liability for false imprisonment.  Smits, 525 N.W.2d at 558 (citations omitted).

Here, as discussed above, no arrest occurred.  Nor is there any allegation or evidence that Menard's employees instructed the police officers to arrest Plaintiffs. Menard's Motion on this claim is granted.

### 2.   Claim XIII: Defamation

Plaintiffs claim that the City defamed Mr. Waters by falsely accusing him of being a sovereign citizen.  (Am. Compl. ¶ 176.)  Referring to Mr. Waters's conduct, Officer Smith asked two Menard's employees if they have had "any contact with sovereign citizens before because this is exactly what they do."  (Zipf Aff. Ex. 2 at 14:27:59-:28:10.)

The City first argues that Officer Smith's statement is not actionable. A statement is not actionable in a defamation claim if the speaker expresses a "'subjective view, an interpretation, a theory, conjecture, or surmise,' rather than claiming to be in possession of 'objectively verifiable facts.'" Schlieman v. Gannett Minn. Broad., Inc., 637 N.W.2d 297, 308 (Minn. Ct. App. 2001) (quoting Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222, 1227 (7th Cir. 1993)). Officer Smith was clearly stating her subjective view that Mr. Waters's conduct was similar to that of a sovereign citizen. Thus, her statement is not actionable.

Even if this statement is actionable, the City is entitled to absolute immunity. "Whether an executive officer is absolutely immune from defamation liability depends on many factors, including the nature of the function assigned to the officer and the relationship of the statements to the performance of that function." Carradine v. State, 511 N.W.2d 733, 736 (Minn. 1994). "Under absolute privilege, immunity is granted even for intentionally false and malicious statements." Buchanan v. Minn. Dep't of Health, 573 N.W.2d 733, 736 (Minn. Ct. App. 1998) (citing Matthis v. Kennedy, 67 N.W.2d 413, 416 (Minn. 1954)).

In Carradine, the Minnesota Supreme Court concluded that a state trooper was shielded by absolute liability for allegedly defamatory remarks in his police report. 511 N.W.2d at 736-37. Among other things, the court reasoned that preparing an arrest report was "a key part of an arresting officer's job" and subjecting an officer to civil liability in a defamation action may deter an officer from performing his or her duties. Id. at 736; see also Bol v. Cole, 561 N.W.2d 143, 148 n.6 (Minn. 1997) (stating that the state trooper

in Carradine was entitled to absolute immunity "because of the critical governmental interest involved").   Carradine did not address whether absolute immunity protects an officers' routine discussions during an active investigation, but the same concerns are clearly present.   Routine discussions during the course of an investigation are also a key part of a police officer's job.   Cf. Carradine, 511 N.W.2d at 736.   And much of these discussions are ultimately recorded in a police report.   Consequently, the Court concludes that the Officer Smith and the City are entitled to absolute immunity.   See id. at 737 ("[T]he immunity enjoyed by the officer extends to the state.").   This claim fails as a matter of law and is dismissed.

### 3.   Claim XIV: Common Law Trespass

Plaintiffs allege that Defendants trespassed on their automobile.   (Am. Compl. ¶ 177.)   "A trespass to chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another."   Strei v. Blaine, 996 F. Supp. 2d 763, 792 (D. Minn. 2014) (Tunheim, J.) (citation omitted).   This claim differs "only in degree" from the tort of conversion and may only involve an unlawful interference with a plaintiff's property interest.   Buzzell v. Citizens Auto. Fin., Inc., 802 F. Supp. 2d 1014, 1024 (D. Minn. 2011) (Kyle, J.) (quotation omitted).   A trespass claim fails if a defendant had lawful justification to exercise control over the property.   Meixner v. Buecksler, 13 N.W.2d 754, 756 (Minn. 1944) (citations omitted).

Even if Defendants intermeddled with Plaintiffs' vehicle, such interference was lawful.   As discussed above, the City had arguable reasonable suspicion to briefly detain

Plaintiffs.   And Menard's detained Plaintiffs only long enough for police officers to arrive and conduct their own investigation.  Claim XIV is denied.

### 4.      Claim XV: Invasion of Privacy—Intrusion upon Seclusion

Plaintiffs allege that this claim is based on Defendants' unauthorized and unjustifiable search of their trunk.  (Am. Compl. ¶ 178.)  An unreasonable intrusion upon the seclusion requires an intentional intrusion on the solitude or seclusion of a person or his private affairs or concerns, "if the intrusion would be highly offensive to a reasonable person."  Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 233 (Minn. 1998).

"An intrusion occurs when an actor believes or is substantially certain that he lacks the necessary legal or personal permission to commit the intrusive act."  Simons v. Con-Way Cent. Exp., Inc., No. 02-CV-3629, 2003 WL 22848939, *3 (D. Minn. Nov. 17, 2003) (citing Fletcher v. Price Chopper Foods of Trumann, Inc., 220 F.3d 871, 875 (8th Cir. 2000)).   The Amended Complaint is wholly absent of any factual allegation to establish that Defendants believed or were substantially certain that they lacked permission to inspect Plaintiffs' trunk.  Therefore, no intrusion exists.

And even if there was an intrusion, Plaintiffs allege no facts to demonstrate that the intrusion was highly offensive.   Whether an intrusion is "highly offensive" is generally a question of fact for the jury, however "there is a preliminary determination of 'offensiveness' which must be made by the court in discerning the existence of a cause of action of intrusion."  Bauer v. Ford Motor Credit Co., 149 F. Supp. 2d 1106, 1109 (D. Minn. 2001) (Doty, J.) (quotation omitted).  "Minnesota Courts have indicated that plaintiffs must meet a high threshold of offensiveness and expectation of privacy to have

a viable claim for intrusion upon seclusion." <u>Rasmusson v. Chisago County</u>, 991 F.

Supp. 2d 1065, 1078 (D. Minn. 2014) (Nelson, J.).   Plaintiffs have not met that

threshold—even the police officers stated that they followed Menard's policy.   (Am.

Compl. Ex. A. at 46:40-:49.)   This claim is without merit and will be dismissed.

    **5.**      **Claim XIX: Negligence Claim**

The Amended Complaint alleges that Defendants "breached their respective duties

to exercise a reasonable standard of care in dealing with Plaintiffs," who suffered

damages.   (<u>Id.</u> ¶¶ 185-86.)   To prevail on a negligence claim in Minnesota, Plaintiffs must

establish: "(1) that the defendant has a legal duty . . . ; (2) that there was a breach of that

duty; (3) that the breach of that duty was the proximate cause of the harm to the plaintiff;

and (4) damage." <u>Gylten v. Swalboski</u>, 246 F.3d 1139, 1141 (8th Cir. 2001) (citing

<u>Gilbertson v. Leininger</u>, 599 N.W.2d 127, 130 (Minn. 1999)).   This claim is based on

conclusory statements and lacks evidentiary support that Defendants breached their duty

of care, it is therefore dismissed.   <u>See</u> <u>Lightle v. Olson</u>, No. 16-cv-15, 2017 WL 2437236,

at *13 (D. Minn. June 5, 2017) (Montgomery, J.) (dismissing a negligence claim that

included only "broad conclusory statements lacking legal or evidentiary support").

**CONCLUSION**

The Amended Complaint does not contain sufficient facts to state any plausible claim to relief.  Accordingly, **IT IS HEREBY ORDERED that**:

1.  Defendant City of Coon Rapids's Motion to Dismiss (Docket No. 33) is **GRANTED**;

2.  Defendant Menard's Motion to Dismiss (Docket No. 38) is **GRANTED**; and

3.  The Amended Complaint (Docket No. 28) is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: <u>December 14, 2017</u>

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge
